```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
UNITED STATES OF AMERICA            :
                                    :
                                    :   INFORMATION
            -v.-                    :
                                    :
  PARESH PATEL,                     :   20 Cr.
                                    :
                                    :
            Defendant.              :
------------------------------------X
```

ORIGINAL

20 CRIM 142

## Count One
### (Obstruction of Justice)

The United States Attorney charges:

1.  The charge herein stems from an effort by PARESH PATEL, the defendant, to obstruct a federal grand jury investigation into bid rigging and fraud in connection with contracts awarded by the Metropolitan Transportation Authority ("MTA") for Superstorm Sandy-related repairs. As detailed below, upon learning of that investigation, PATEL, then an MTA employee, took numerous steps, including deleting emails and asking others to destroy evidence, to obstruct the investigation.

### Background

2.  The MTA is a public authority charged with overseeing transportation agencies, including New York City Transit ("NYCT"), which delivers transportation services to the New York City metropolitan area, including the New York City subway

system. From in or about 1987 through in or about August 2018, PARESH PATEL, the defendant, was employed by the MTA. From at least in or about 2013 through in or about August 2018, PATEL was a "program manager" at the MTA. In that capacity, PATEL was responsible for oversight of capital projects, including Superstorm Sandy-related repairs, and he was a member of certain committees that awarded contracts.

3. MTA Employee-1, who has since retired from the MTA, was the direct supervisor of PARESH PATEL, the defendant, while PATEL was a program manager. MTA Employee-2 was responsible for providing technical support to employees and MTA-hired contractors. In addition to working together, PATEL, MTA Employee-1, and MTA Employee-2 were friends.

MTA post-Superstorm Sandy Consulting Contracts

4. In or about 2013, in order to manage necessary subway rehabilitation work following Superstorm Sandy, NYCT awarded through a competitive request for proposals process a series of consultant construction management contracts, or CCM contracts, for managers to oversee the work of general contractors on various post-Sandy projects.

5. To prevent self-dealing and the appearance of corruption, the MTA maintains rules relating to conflicts of interest. The rules provide that MTA employees are barred from participating in the selection, award, or administration of a

contract if the employee, his or her family member, or an organization that employs the employee or one of the employee's family members has a financial interest in any of the companies that propose or bid on, or are awarded, such a contract.

### PARESH PATEL's Sub-Consultant Entity

6. In or about June 2014, MTA Employee-1 and PARESH PATEL, the defendant, setup an engineering consulting firm named Satkirti Consulting Engineering LLC ("Satkirti"). Because MTA rules prohibited them from having an interest in such a company, MTA Employee-1 and PATEL registered Satkirti in the names of the daughter of PARESH PATEL, the defendant, and the son of MTA Employee-1.

7. In or about September 2014, NYCT posted a request for proposals for a CCM contract on "'Sandy Recovery Project - Joralemon Tube Rehabilitation in the Boroughs of Manhattan and Brooklyn" (the "Joralemon Tube Project"). The Joralemon Tube is an underground tunnel through which 4 and 5 trains travel in passing between Brooklyn and Manhattan. Company-1, an engineering services firm, submitted a proposal in response to the posting. Company-1's proposal identified Satkirti as a subcontractor, which would provide "professional engineering services" on the Joralemon Tube Project, including review and field inspection of engineering work on the project.

8. PARESH PATEL, the defendant, and MTA Employee-1 took steps to conceal their control over Satkirti and their involvement in Satkirti's bid for a subcontractor role on the Joralemon Tube Project. For instance, forms completed by Satkirti and provided to Company-1 in connection with the project indicated that the son of MTA Employee-1 and the daughter of PATEL were the vice-presidents of Satkirti, but the forms did not disclose the involvement of MTA Employee-1 and PATEL. Similarly, in or about November 2014, when Company-1 was invited by NYCT to give a presentation on its proposal for the Joralemon Tube Project, Satkirti sent three independent contractors who had been hired by the company, but no one from Satkirti's management, including PATEL or MTA Employee-1.

9. In or about January 2015, at the direction of PARESH PATEL, the defendant, MTA Employee-1's son and PATEL's daughter transferred their ownership of Satkirti to the father of MTA Employee-2 ("Satkirti Employee-1"). Satkirti Employee-1 has no background in engineering and at the time of the transfer was unemployed.

10. In or about February 2015, NYCT awarded Company-1 the Joralemon Tube contract. As part of the winning proposal, Satkirti was included in the contract between NYCT and Company-1. According to a subcontract between Company-1 and Satkirti entered into in February 2015, Satkirti would be

4

compensated in an amount not to exceed approximately $1,023,847.76. The subcontract was purportedly signed by Satkirti Employee-1, as vice-president of Satkirti.

11. At the time it was hired as sub-consultant by Company-1, Satkirti's purported managers did not have any relevant experience or the expertise to do the work that was required for the operation of Satkirti. Satkirti Employee-1 did not know what Satkirti's business was, nor was he fluent in the English language -- the language in which Satkirti conducted its business. Satkirti's only other purported employee involved in the company's management (hereinafter, "Satkirti Employee-2") was recruited by PARESH PATEL, the defendant, from a pizzeria owned by PATEL, where the individual cooked and delivered pizzas.

12. On or about, April 28, 2014, PARESH PATEL, the defendant, created a company email account (the "Satkirti Email Account"), which Satkirti used to communicate with Company-1 and conduct its business. PATEL instructed Satkirti's purported employees to use the Satkirti Email Account, and occasionally provided instructions and sometimes dictated what should be written from the Satkirti Email Account. PATEL also visited Satkirti's purported office, which was physically located in the basement of MTA Employee-2's house, to give Satkirti's purported employees instructions and to assist them in writing emails from

5

the Satkirti Email Account and completing paperwork. On many occasions, PATEL instructed Satkirti's purported employees not to mention PATEL's name and reminded them that PATEL was not supposed to be involved in the operation of Satkirti.

13. Pursuant to the terms of the subcontract awarded to Satkirti, the company was supposed to be paid approximately $1,023,817. However, in total, Satkirti was paid approximately $91,882.77 before it was terminated from the project in or about May 2015 because it failed to obtain a required disadvantaged business enterprise program certification.

14. In or about January 2016, at the direction of PARESH PATEL, the defendant, Satkirti was dissolved.

### The Cover-up

15. In or about the spring 2016, the MTA Office of Inspector General ("MTA-OIG") served subpoenas and conducted interviews with individuals involved in Satkirti, many of whom made false statements about their involvement in the company. For instance, on or about May 25, 2016, MTA-OIG served a subpoena addressed to Satkirti on Satkirti Employee-1. Satkirti Employee-1 was interviewed and told MTA-OIG investigators that he and his wife incorporated Satkirti on the "advice of a friend," while declining to name who that friend was. Later that day, following his interview with MTA-OIG, Satkirti Employee-1 called Satkirti Employee-2, with whom he had not

spoken since Satkirti dissolved. Satkirti Employee-1 inquired whether Satkirti Employee-2 had Satkirti-related emails, and asked Satkirti Employee-2 to print any Satkirti-related emails he had and bring them to Satkirti Employee-1.

16. In or about June 2016, PARESH PATEL, the defendant, called Satkirti Employee-2 and asked him to come to PATEL's home, which Satkirti Employee-2 did. There, PATEL told Satkirti Employee-2 that PATEL needed Satkirti Employee-2's Satkirti-related emails for something "having to do with the government," including emails in Satkirti Employee-2's personal email account. PATEL asked Satkirti Employee-2 to copy the emails onto a disc for PATEL, but to first delete any emails that Satkirti Employee-2 had with PATEL. PATEL also told Satkirti Employee-2 to delete all emails with PATEL from Satkirti Employee-2's personal email account. Satkirti Employee-2 did as PATEL instructed.

17. On or about November 3, 2016, a federal grand jury subpoena was served on an employee of Company-1, who has worked with and is a friend of PARESH PATEL, the defendant. On or about November 16, 2016, after that subpoena was served, PATEL deleted the Satkirti Email Account. At or around the time of its deletion, the Satkirti Email Account contained records of Satkirti's business with the MTA and Company-1, as well as evidence that would have connected PATEL to Satkirti.

18. Over the course of the investigation, and from at least in or about the summer of 2018, at the request of PARESH PATEL, the defendant, several individuals questioned by federal agents and officers concealed PATEL's involvement in Satkirti. For example, Satkirti Employee-1 falsely claimed that he was the owner and operator of Satkirti and made all of the company's decisions without the involvement of PATEL. Similarly, Satkirti Employee-2 falsely denied knowing who PATEL was when he was first approached by federal agents in 2018.

## Statutory Allegations

19. Beginning in or about June 2016, up to and including in or about November 2019, in the Southern District of New York and elsewhere, PARESH PATEL, the defendant, did knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, to wit, PATEL, in order to obstruct an investigation into Satkirti, within the jurisdiction of the United States Department of Transportation and the United States Attorney's Office for the Southern

8

District of New York, deleted the Satkirti Email Account and told Satkirti Employee-2 to delete emails about PATEL.

(Title 18, United States Code, Sections 1519 and 2.)

*Geoffrey S. Berman*
GEOFFREY S. BERMAN
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PARESH PATEL,

Defendant.

---

INFORMATION

20 Cr.

(18 U.S.C. §§ 1519, and 2)

---

GEOFFREY S. BERMAN
United States Attorney.

---